UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


ANITA FORD                                    CIVIL ACTION


VERSUS                                        NO: 13-6317


MENTOR WORLDWIDE, LLC, SOUTH                  SECTION: R
FLORIDA PLASTIC SURGERY
ASSOCIATES, AND DR. DON R.
REVIS, JR.


**ORDER AND REASONS**

Defendants Donald Revis and South Florida Plastic Surgery
Associates move to dismiss this case on two grounds.[1] First,
defendants argue that this Court lacks personal jurisdiction over
them. Second, defendants contend that plaintiff has failed to
state a claim upon which relief can be granted because she failed
to comply with the presuit notice and screening requirements of
the Florida Medical Malpractice Reform Act. Because the Court
finds that it does not have jurisdiction over Dr. Revis and
SFPSA, the Court GRANTS defendants' motion and dismisses
plaintiff's suit. The Court does not reach the parties' arguments
concerning defendants' motion to dismiss for failure to state a
claim.


I.    **BACKGROUND**

This case arises out of injuries plaintiff Anita Ford

---

[1]     R. Doc. 18.

allegedly suffered after a failed breast augmentation procedure.[2]
Plaintiff, a Louisiana resident, alleges that she learned about
Dr. Revis through the website www.justbreastimplants.com ("JBI"),
which Dr. Revis and SFPSA allegedly used "to solicit patients
from across the country to come to Florida for breast
augmentation surgery."[3] According to plaintiff, she e-mailed Dr.
Revis on July 23, 2012, to "inquir[e] about breast augmentation,"
and the two exchanged approximately twenty-two e-mails over the
next several weeks.[4] Dr. Revis allegedly knew that plaintiff was
a Louisiana resident while he was corresponding with her.[5]

Dr. Revis performed breast augmentation surgery on
plaintiff, using implants manufactured by Mentor Worldwide, LLC,
on September 28, 2012 at the Broward General Medical Center in
Fort Lauderdale, Florida.[6] Plaintiff alleges that she began
feeling pain in her breast in mid-October, and that she
corresponded with Dr. Revis about that pain between November 2012
and January 2013.[7] On June 5, 2013, Dr. Revis performed a

---

[2]    R. Doc. 1-1 at 28.

[3]    *Id.* at 29.

[4]    *Id.* at 28-29.

[5]    *Id.* at 29.

[6]    *Id.* at 30; R. Doc. 18-3 at 1.

[7]    R. Doc. 1-1 at 30.

bilateral breast implant exchange on plaintiff.[8] Plaintiff
alleges that after Dr. Revis removed the Mentor implants from
plaintiff, he discovered that one of the implants was leaking
saline.[9] According to plaintiff, the leaking saline in her breast
implant caused her to experience pain and to require another
surgery.[10]

    Neither Dr. Revis nor SFPSA regularly does business in
Louisiana, and Dr. Revis has never lived or practiced medicine
there.[11] While plaintiff alleges that "about 50% of Dr. Revis'
patients are out of state or international patients,"[12] Dr.
Revis's uncontroverted affidavit reflects that less than 0.001%
of his patient base comes from Louisiana.[13]

    On September 12, 2013, plaintiff filed suit against Mentor,
Dr. Revis, and SFPSA in Louisiana state court.[14] She brought
claims against Mentor under the Louisiana Products Liability
Act[15] and a medical malpractice claim against Dr. Revis and

---

[8]    *Id.* at 31; R. Doc. 18-3 at 2.

[9]    R. Doc. 1-1 at 31.

[10]   *Id.*

[11]   R. Doc. 18-3 at 2.

[12]   R. Doc. 1-1 at 29.

[13]   R. Doc. 18-3 at 2.

[14]   R. Doc. 1-1 at 28.

[15]   *Id.* at 32-35.

SFPSA.[16] Defendants removed the case to this Court on November 1, 2013, citing diversity jurisdiction.[17] On December 17, the Court dismissed plaintiff's claims against Mentor on the ground that they were preempted by federal law under *Riegel v. Medtronic*, 552 U.S. 312 (2008).[18] Dr. Revis and SFPSA now move to dismiss plaintiff's remaining claims for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

## II.  LEGAL STANDARD

Personal jurisdiction "is 'an essential element of the jurisdiction of a district . . . court,' without which the court is 'powerless to proceed to an adjudication.'" *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) (alteration in original) (quoting *Emp'rs Reinsurance Corp. v. Bryant*, 299 U.S. 374, 382 (1937)). When a nonresident defendant moves the court to dismiss for lack of personal jurisdiction, the plaintiff bears the burden to show that personal jurisdiction exists. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). When the court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in this case, the plaintiff need only make a prima facie case that jurisdiction exists;

---

[16]     *Id.* at 35-36.

[17]     R. Doc. 1.

[18]     R. Doc. 17.

"[p]roof by a preponderance of the evidence is not required." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). The allegations of the complaint, except as controverted by opposing affidavits, are taken as true, and all conflicts in the facts are resolved in favor of the plaintiff. *Id.*; *Revell*, 317 F.3d at 469. In making its determination, the Court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Revell*, 317 F.3d at 469 (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)).

A court has personal jurisdiction over a defendant if (1) the forum state's long-arm statute confers personal jurisdiction over the defendant, and (2) the forum state's exercise of jurisdiction complies with the Due Process Clause of the Fourteenth Amendment. *Id.* Because Louisiana's long-arm statute, La. Rev. Stat. § 13:3201, *et seq.*, extends jurisdiction to the full limits of due process, the Court's inquiry collapses into a single question: whether the exercise of its jurisdiction in this case satisfies federal due process requirements. *Dickson Mar. Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999) (citing La. Rev. Stat. § 13:3201(B)); *Alonso v. Line*, 846 So. 2d 745, 750 (La. 2003). The exercise of personal jurisdiction over a nonresident defendant satisfies due process when (1) "that defendant has purposefully availed himself of the benefits and

protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Revell*, 317 F.3d at 470 (quoting *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999)).

There are two ways to establish minimum contacts: specific jurisdiction and general jurisdiction. *See id.* Specific jurisdiction exists when a nonresident defendant "has 'purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001) (quoting *Alpine View Co. v. Atlas Copco A.B.*, 205 F.3d 208, 215 (5th Cir. 2000)); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). Minimum contacts may be established by actions, or even just a single act, by the nonresident defendant whereby it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "The non-resident's 'purposeful availment' must be such that the defendant 'should reasonably anticipate being haled into court' in the forum state." *Ruston Gas Turbines Inc. v. Donaldson Co.*, 9 F.3d 415,

6

419 (5th Cir. 1993) (quoting *World—Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Importantly, "[t]he unilateral activity of [a plaintiff] who claim[s] some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 222 (5th Cir. 2012) (second and third alterations in original) (quoting *Hanson*, 357 U.S. at 253).

The Fifth Circuit has synthesized the test for specific jurisdiction into a three-step inquiry. The court must determine

> (1) whether the defendant has minimum contacts with the forum state, *i.e.*, whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006) (quoting *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002)). "If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Id.*

General jurisdiction will attach, even if the act or transaction sued upon is unrelated to the defendant's contacts with the forum state, if the defendant has engaged in "continuous and systematic" activities in the forum state. *Helicopteros*, 466

U.S. at 414-416 & n.9 (1984); *Revell*, 317 F.3d at 470. The Fifth Circuit has characterized the "continuous and systematic contacts" test as a "difficult one to meet." *Johnston*, 523 F.3d at 609. Contacts between a defendant and the forum state must be "extensive" and "substantial" to give rise to general jurisdiction. *Id.; see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2853-54 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation it is an equivalent place, one in which the corporation is fairly regarded as at home."). "[E]ven repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous, and systematic contacts required for a finding of general jurisdiction." *Johnston*, 523 F.3d at 609-10 (alteration in original) (quoting *Revell*, 317 F.3d at 471).

## III. DISCUSSION

## A.   **Specific Jurisdiction**

Plaintiff makes two primary arguments in contending that this Court has jurisdiction over Dr. Revis and SFPSA. First, she argues that defendants made contacts with Louisiana through JBI, which she characterizes as an "interactive website."[19] Second, she contends that, by agreeing to perform breast augmentation on

---

[19]     R. Doc. 22 at 5.

8

plaintiff while plaintiff was living in Louisiana, Dr. Revis "entered into a contract in the state of Louisiana" and thereby availed himself of the benefits and protections of the state.[20] The Court will address each argument in turn.

### 1.   Defendants' Online Presence

A court, in determining whether it can exercise personal jurisdiction over a nonresident defendant based on the defendant's online presence, "look[s] to the 'nature and quality of commercial activity that an entity conducts over the Internet.'" *Mink*, 190 F.3d at 336 (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). The Fifth Circuit has adopted the test set forth in *Zippo*, which "categorized Internet use into a spectrum of three areas" as follows:

> At one end of the spectrum, there are situations where a defendant clearly does business over the Internet by entering into contracts with residents of other states which "involve the knowing and repeated transmission of computer files over the Internet . . . ." In this situation, personal jurisdiction is proper. At the other end of the spectrum, there are situations where a defendant merely establishes a passive website that does nothing more than advertise on the Internet. With passive websites, personal jurisdiction is not appropriate. In the middle of the spectrum, there are situations where a defendant has a website that allows a user to exchange information with a host computer. In this middle ground, "the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the Website."

---

[20]     *Id.* at 7.

*Id.* (alteration in original) (citations omitted). Plaintiff contends that this case falls into the first *Zippo* category because Dr. Revis and SFPSA do business through JBI, or, alternatively, that it falls into the middle *Zippo* category because users of the website can post questions on the website and have them answered by physicians such as Dr. Revis.

Plaintiff's argument that the site belongs in the first *Zippo* category is unavailing, because there is no indication that physicians and patients actually "do business" (that is, enter into contracts for medical services) through the websites. The cases that plaintiff cites in support of her argument are distinguishable, because they all involve sites that allowed individuals to make purchases online. *See Tempur-Pedic Int'l v. Go Satellite, Inc.*, 758 F. Supp. 2d 366, 373 (N.D. Tex. 2010) (defendant's website "allow[ed] placement of online orders and enabl[ed] communication between Texas-based customers and [defendant's] sales staff via live chat and e-mail"); *AdvanceMe, Inc. v. Rapidpay, LLC*, 450 F. Supp. 2d 669, 673 (E.D. Tex. 2006) (defendant's website allowed potential customers to "fill out an online form and apply for [defendant's] services through its website"); *Crummy v. Morgan*, 965 So. 2d 497, 504 (La. Ct. App. 2007) (defendant subject to personal jurisdiction in Louisiana because he sold plaintiff, a Louisiana resident, an RV through the website eBay); *cf. Am. Eyewear, Inc. v. Peeper's Sunglasses &*

*Accessories, Inc.*, 106 F. Supp. 2d 895, 901 (N.D. Tex. 2000) (finding that website fell "in the middle of the continuum" even though it allowed customers to "submit product order forms that contain credit card and shipping information"). Here, in contrast, plaintiff has not alleged or shown that she or any other user of JBI purchased breast augmentation services through the website.

The difference between the second and third *Zippo* categories is usefully illustrated by comparing a pair of Fifth Circuit cases, *Mink* and *Revell*. In *Mink v. AAAA Dev. LLC*, 190 F.3d 333 (5th Cir. 1999), defendant AAAA maintained a website that "post[ed] information about [AAAA's] products and services" and "provide[d] users with a printable mail-in order form, AAAA's toll-free telephone number, a mailing address," and an e-mail address. *Id.* at 336-337. The court observed that AAAA did not take orders through its website; instead, the website allowed AAAA only to "reply to e-mail initiated by website visitors." *Id.* at 337. The Fifth Circuit accordingly held that the site was nothing "more than passive advertisement which is not grounds for the exercise of personal jurisdiction." *Id.* In contrast, in *Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002), the Fifth Circuit held that an online bulletin board operated by the Columbia University School of Journalism fell in the intermediate *Zippo* category, because visitors were able to "participate in an open

forum hosted by the website." *Id.* at 472.

JBI has features of the sites at issue in both *Mink* and *Revell*, but the Court finds this case more analogous to *Revell*. Like the site considered in *Mink*, JBI contains information about and contact information for a commercial enterprise, but it also has an interactive bulletin board, like the site in *Revell*. The *Revell* court considered the interactive bulletin board a key distinction with the site in *Mink*. Accordingly, the Court finds that JBI falls into the intermediate *Zippo* category, and could potentially form the basis for specific jurisdiction.

But, even concluding that the site is to some extent interactive under *Zippo*, the Court cannot find that specific jurisdiction obtains here because plaintiff's alleged injury did not arise out of her use of the website. Plaintiff alleges merely that she found Dr. Revis's contact information on the site and initiated an e-mail exchange with him to inquire about breast augmentation. There is no indication that plaintiff ever used the site in any other way, such as to contact Dr. Revis or another physician through the bulletin board. Plaintiff's alleged injury stemmed from Dr. Revis's alleged *negligence in Florida*, not anything he did on the website. In contrast, in *Mink*, *Revell*, and other cases applying *Zippo*, "the gravamen of parties' causes of action result[ed] purely from activities conducted on websites." *Gatte v. Ready 4 A Change, LLC*, Nos. 2:11-CV-2083, 2:12-CV-0991,

2013 WL 123613, at *11 (W.D. La. Jan. 9, 2013).

This would be a different case if, say, Dr. Revis had given plaintiff erroneous medical advice through the website while she was in Louisiana, and she had suffered injury as a result of following that advice. But plaintiff used the site merely to obtain Dr. Revis's e-mail address and initiate contact with him. Under such circumstances, Dr. Revis's presence on a website, even one with interactive features, does not constitute purposeful availment. Cf. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999) ("[W]hen a lawyer chooses to represent a client in another forum, that in itself does not confer personal jurisdiction [in a legal malpractice case] if the claim does not arise from the lawyer's contacts with the forum."); *DMG Holdings, LLC v. AM. World Pictures, Inc.*, Civil Action No. 11-1572, 2011 WL 4899949, at *4 (E.D. La. Oct. 14, 2011) (defendant's communications with the forum state did not constitute purposeful availment because plaintiff's claim arose out defendant's performance of a contract, not the communications themselves).

2.  *Dr. Revis's Agreement to Perform Breast Augmentation on Plaintiff*

It is well-settled that "entering into a contract with an out-of-state party, without more, is not sufficient to establish minimum contacts." *Latshaw v. Johnson*, 167 F.3d 208, 211 (5th Cir. 1999) (citing *Burger King*, 471 U.S. at 478–79). "Rather, in

a breach of contract case, to determine whether a party purposefully availed itself of a forum, a court must evaluate 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . .'" *Id.* (quoting *Burger King*, 471 U.S. at 479). True, plaintiff allegedly engaged with Dr. Revis by e-mail several times in the weeks leading up to her surgery, and entered into a contract with him regarding that surgery while she was located in Louisiana. But the Fifth Circuit has made clear that actions of this kind, without more, do not constitute sufficient minimum contacts that will subject the nonresident defendant to the jurisdiction of the forum state's courts. In *Freudensprung v. Offshore Technical Servs.*, Inc., 379 F.3d 327 (5th Cir. 2004), the Fifth Circuit noted that it had

> repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant.

*Id.* at 344; *accord Renoir v. Hantman's Assocs.*, 230 F. App'x 357, 360 (5th Cir. 2007) ("An exchange of communications in the course of developing and carrying out a contract . . . does not, by itself, constitute the required purposeful availment of the benefits and protections of [the forum state's laws]."). "Otherwise, jurisdiction could be exercised based only on the

14

fortuity that one of the parties happens to reside in the forum state." *Renoir*, 230 F. App'x at 360.

Applications of this principle abound. In *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773 (5th Cir. 1986), the court found that Texas courts did not have specific jurisdiction over a nonresident defendant who had entered into a contract with a Texas corporation, sent a joint operating agreement and three payments to Texas, and engaged with extensive communication with the Texas corporation. *Id.* at 777-78. Similarly, in *Stuart v. Spademan*, 772 F.2d 1185 (5th Cir. 1985), the court found no specific jurisdiction over a nonresident defendant who had contracted with Texas residents, directed letters and phone calls to Texas, sent products to Texas, negotiated a contract with plaintiffs that was to be governed by Texas law, and marketed his product in Texas. *Id.* at 1192. And in *Freundensprung*, the court found no specific jurisdiction over a defendant who had "contracted with Texas-based [company] OTSI, initiated and contemplated a long-term business relationship with OTSI, communicated with OTSI concerning the development and execution of the contract, and wired money to OTSI in Texas." 379 F.3d at 345.

Here, the case for specific jurisdiction is even weaker than it was in the foregoing cases. Unlike in *Freundensprung*, Dr. Revis did not "contemplate[] a long-term business relationship"

15

with plaintiff; he merely agreed to perform a one-time surgery on plaintiff in Florida. Unlike in *Stuart*, there is no indication that the parties intended that Louisiana law would govern their contract. Finally, although plaintiff contends in her opposition to the motion to dismiss that she sent money to Dr. Revis while she was still in Louisiana, she does not allege that in her complaint, and there is no evidence in the record to that effect.[21] This fact further distinguishes this case from *Freundensprung*, *Holt*, and *Stuart*.

Moreover, that the contract was performed in Florida, not Louisiana, significantly weakens the case for specific jurisdiction. *See Freudensprung*, 379 F.3d at 345 (any significance of defendant's contacts with Texas diminished when "material portions of the contract . . . were to be performed in West Africa, not Texas"); *Holt*, 801 F.2d at 778 (when material performance occurred outside the forum state, fact that defendant mailed payments to forum state did not weigh heavily in court's determination). Any contact that Dr. Revis directed to plaintiff in Louisiana "rested on nothing but 'the mere fortuity that [plaintiff] happens to be a resident of the forum.'" *Holt*, 801 F.2d at 778 (quoting *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir. 1985); *cf. Level 10 Promotions, LLC v. Wilkes-*

---

[21]    "It is axiomatic that assertions in legal briefs are not evidence." *Howard v. Ashcroft*, 248 F. Supp. 2d 518, 526 n.26 (M.D. La. 2003).

*Barre Motors, Inc*., Civil Action No. 07-6480, 2008 WL 2781534, at *4 (E.D. La. July 14, 2008) (finding no personal jurisdiction over a Pennsylvania car dealership that had entered into a contract with a term of less than one year that "anticipated one to two sales events to take place in Pennsylvania, involved no performance by the defendant in Louisiana, and contained no choice of law provision").

It is true, of course, that "[w]hen the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment." *Wien Air Alaska*, 195 F.3d at 213. But that is not the case here. Plaintiff's claims are based on defendants' allegedly negligent *performance* of the contract, not on the communications that led up to the agreement. *Cf. DMG Holdings*, 2011 WL 4899949, at *4 (communications with the forum cannot give rise to specific jurisdiction when the cause of action is based, not on the communications, but on performance of a contract formed after the communications took place). Accordingly, Dr. Revis's communications with plaintiff while she was in Louisiana do not constitute purposeful availment.

Taken together, the foregoing considerations compel the conclusion that this court may not exercise specific jurisdiction over Dr. Revis and SFPSA based on their agreement to perform plaintiff's breast augmentation surgery.

3.  *Summary*

The Court finds, based on the analysis above, that Dr. Revis and SFPSA have not purposefully availed themselves of the benefits and protections of Louisiana law such that they would reasonably expect to be haled into court there.

The vast majority of courts to consider whether a court can assert personal jurisdiction over an out-of-state healthcare provider that negligently treats a forum resident in a foreign state have reached similar results, reasoning, in the words of the Supreme Court of Rhode Island, that "[t]he residence of a recipient of personal services rendered elsewhere is irrelevant and totally incidental to the benefits provided by the defendant at his own location." *Almeida v. Radovsky*, 506 A.2d 1373, 1376 (R.I. 1986). For example, in *Mendel v. Williams*, 53 A.3d 810 (Pa. Sup. Ct. 2012), the court held that it did not have jurisdiction over a New Jersey physician who had allegedly caused plaintiff to suffer paralysis by failing to treat her spinal abscess while she was a patient at defendant's New Jersey facility. *Id.* at 823-28. It noted that "[t]he majority of other jurisdictions have applied a similar approach to personal jurisdiction over out-of-state doctors in medical malpractice actions." *Id.* at 824 (collecting cases). Similarly, in *Kennedy v. Ziesman*, 526 F. Supp. 1328 (E.D. Ky. 1981), the court held that it lacked jurisdiction over an Ohio physician who had treated a Kentucky resident in Ohio, even

18

though the physician maintained a telephone listing in Kentucky. It concluded that "the mere carrying of a telephone listing" in a Kentucky phonebook could not "amount in and of itself to regular solicitation of business" such as to make the physician subject to suit in Kentucky. *Id.* at 1331-32; *accord Estate of Poole v. Grosser*, 731 N.E.2d 226, 230 (Ohio Ct. App. 1999).

So it is here. Dr. Revis's presence on JBI is similar to the telephone listings at issue in *Kennedy* and *Estate of Poole*, in that it serves as a passive advertisement that allows the potential customer to contact the advertiser if he or she is interested in the service offered. (As noted above, to the extent the site has interactive features, there is no indication that plaintiff used those features to communicate with Dr. Revis.) In fact, the Court finds that Dr. Revis's online listing is an even weaker basis for personal jurisdictions than would be a telephone listing in the forum state. Whereas the defendants in *Kennedy* and *Estate of Poole* decided to list their contact information in the forum state *in particular*, here Dr. Revis put his information on a website and thus established "in a sense, a continuous presence everywhere in the world," *Revell*, 317 F.3d at 471. "[O]ne cannot purposefully avail oneself of 'some forum someplace'; rather, as the Supreme Court has stated, due process requires that 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court

there.'" *Id.* at 475 (quoting *Burger King*, 471 U.S. at 474). Dr. Revis and SFPSA did *not* direct their advertising toward Louisiana in particular, and the services they rendered were directed to plaintiff herself, not to any particular place, *cf. Almeida*, 506 A.2d at 1376 (noting that, when one travels to a physician for medical services, "he must realize that the services are not directed to impact on any particular place, but are directed to the needy person himself"). Accordingly, this Court may not exercise specific jurisdiction over Dr. Revis and SFPSA.

**B.  General Jurisdiction**

Plaintiff also argues that the court has general jurisdiction over Dr. Revis and SFPSA. The question here is whether the defendants have engaged in "continuous and systematic" activities in Louisiana. As stated, general jurisdiction requires extensive contacts with the forum, such that the defendant is fairly regarded as at home in the forum state. *See Goodyear Dunlop*, 131 S.Ct. at 2853-54.

In *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 447-49 (1952), the Supreme Court held that exercise of general jurisdiction was proper when the defendant had temporarily relocated its headquarters to the forum state during World War II. By contrast, in *Helicopteros*, the Supreme Court held that the defendant's contacts with Texas were insufficient to support

20

jurisdiction when it sent its chief executive officer to Texas
for contract negotiations, accepted checks drawn on a Texas bank,
purchased helicopters, equipment and training services in Texas
for substantial sums, and sent personnel to Texas for training.
466 U.S. at 415, 418-19. Similarly, in *Bird v. Parsons*, 289 F.3d
865 (6th Cir. 2002), cited approvingly by the Fifth Circuit in
*Revell*, the Sixth Circuit held that Ohio courts lacked general
jurisdiction over a foreign business, even though the business
maintained a website that was accessible to Ohio residents and
over 4000 Ohio residents had used defendant's website. *See
Revell*, 317 F.3d at 471.

The Court finds that defendants' contacts with Louisiana are
not sufficiently substantial to serve as a basis for general
jurisdiction. There is no indication in the record that Dr. Revis
or SFPSA do or ever have done business in Louisiana; indeed, Dr.
Revis avers that he has never lived or practiced medicine
there.[22] Less than 0.001% of Dr. Revis's patient base comes from
Louisiana. Even viewed in the light most favorable to plaintiff,
these minimal contacts with Louisiana are not sufficient for
general jurisdiction. *Cf. Goodyear Dunlop*, 131 S.Ct. at 2852,
2857 (defendant tire manufacturer not subject to general
jurisdiction of North Carolina based on the fact that some of its
tires were distributed in North Carolina; such "attenuated

_____

[22]    R. Doc. 18-3 at 2.

connections to the State . . . fall far short of 'the continuous and systematic general business contacts' necessary to empower North Carolina to entertain suit against [defendant] on claims unrelated to anything that connects them to the State").

The court in *Gatte v. Ready 4 A Change, LLC*, a wrongful death suit, reached the same result on similar facts. There, the decedent, a Louisiana resident, had contacted R4C, a Minnesota-based company that "specialize[d] in connecting people who desire affordable weight loss surgery with hospitals and doctors in Mexico who provide this surgery," after coming across R4C's website. *Gatte*, 2013 WL 123613, at *1. The defendant then arranged for the decedent to travel to Mexico for weight loss surgery. *Id.* The surgery allegedly resulted in the decedent's death. *Id.* at *2. The court rejected the plaintiff's argument that it had general jurisdiction over R4C, finding that "[w]hile some Louisiana residents may have used the site to contact R4C for their services, there is no indication that [R4C] conversely affirmatively reached out and specifically contacted Louisiana residents through the website on a sufficiently continuous, systematic basis in order for general jurisdiction to attach." *Id.* at *9. The court also noted that "only sixteen out of over a thousand of R4C's clients have been from Louisiana, thus accounting for a very small percentage of their total clientele." *Id.* A similar conclusion is appropriate here.

## C.    Summary

The Court finds that defendants do not have minimum contacts with Louisiana such that this Court can exercise personal jurisdiction over them consistent with the Due Process Clause. Consequently, the Court need not consider whether exercising personal jurisdiction over defendants would offend traditional notions of fair play and substantial justice.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motion to dismiss. Plaintiff's complaint is dismissed without prejudice.


New Orleans, Louisiana, this 20th day of February, 2014.


_____

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

23